## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | No. 4:18-cv-02350-MWB |
| Plaintiff, | : | |
| | : | (Honorable Matthew W. Brann) |
| v. | : | |
| | : | Electronically Filed |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Dated: April 26, 2019

James A. Keller, Esq. (PA78955)
Amy L. Piccola, Esq. (PA208888)
    *Admitted Pro Hac Vice*
SAUL EWING ARNSTEIN & LEHR LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Phone: (215) 972-1964 / 8405
Fax: (215) 972-4152 / 1871
James.Keller@saul.com /
Amy.Piccola@saul.com

# Table of Contents

**Page**

**I.  Plaintiff premises his arguments regarding a lack of "fair process" and "unbiased decision-makers" on misstatements of fact and misapplication of the law** ..................................................................................1

    A.  Plaintiff inappropriately draws parallels to an earlier iteration of the University's procedures and inaccurately describes the process followed during the investigation into his misconduct ......................1

  1.  The procedure applied to Doe's case is significantly different from the "paper-only Investigative Model" criticized in the 2018 Decision .............2

  2.  Consistent with the Title IX Procedures, the Investigator provided the parties with access and an opportunity to respond to the information gathered ..................................................................................................3

    B.  The University followed its procedures in investigating and adjudicating the complaint against Plaintiff ......................................5

    C.  The Hearing Panel was vested with sole and complete authority to make a finding of responsibility ........................................................8

**II.  The University's use of the preponderance of the evidence standard comports with due process** ..........................................................................10

**III.  Courts in this Circuit, and nationwide, have held that "mediated cross-examination," as employed by the University, satisfies due process** .........12

**IV.  Active participation of an advisor in student disciplinary proceedings is not a constitutional guarantee** ...............................................................14

**V.  Conclusion** ......................................................................................................15

## <u>Table of Authorities</u>

<u>**Page(s)**</u>

**Cases**

*Doe v. Baum*,
   903 F. 3d 575 (6th Cir. 2018) ...........................................................................13

*Doe v. Brown Univ.*,
   210 F. Supp. 3d 310 (D.R.I. 2016) ......................................................................4

*Doe v. Cummins*,
   662 F. App'x 437 (6th Cir. 2016) ................................................................12, 15

*Doe v. Ohio State Univ.*,
   219 F. Supp. 3d 645 (S.D. Ohio 2016) ...............................................................4

*Doe v. Pennsylvania State Univ.*,
   336. F. Supp. 3d 441 (M.D. Pa. 2018) ...........................................................2, 3

*Doe v. Regents of Univ. of Cal.*,
   5 Cal. App. 5th, 210 Cal. Rptr. 3d .............................................................12, 13

*Doe v. Univ. of Arkansas-Fayetteville*,
   No. 5:18-CV-05182, 2019 WL 1493701 (W.D. Ark. Apr. 3, 2019).................11

*Doe v. Univ. of Cincinnati*,
   173 F. Supp. 3d 586 (S.D. Ohio 2016) .............................................................11

*Doe v. Univ. of Cincinnati*,
   872 F.3d 393 (6th Cir. 2017) ............................................................................12

*Doe v. Univ. of S. Cal.*,
   29 Cal. App. 5th 1212, 1235 .........................................................................9, 13

*Doe v. Univ. of S. Miss.*,
   No. 2:18-cv-00153 (S. D. Miss. Sept. 26, 2018) ..............................................12

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ...............................................................................1

*Furey v. Temple Univ.*,
   730 F. Supp. 2d 380 (E.D. Pa. 2010).................................................................7

*Furey v. Temple Univ.*,
    884 F. Supp. 2d 223 (E.D. Pa. 2012) ................................................................ 13

*Gischel v. Univ. of Cincinnati*,
    302 F. Supp. 3d 961 (S.D. Ohio 2018) .............................................................. 11

*Gorman v. Univ. of Rhode Island*,
    837 F.2d 7 (1st Cir. 1988) ............................................................................ 12, 13

*Haney v. West Chester Univ.*,
    Civ. A. No. 18-02456, 2018 WL 3917975
    (W.D. Pa. Aug. 16, 2018) .................................................................................. 14

*Lee v. Univ. of New Mexico*,
    Case 1:17-cv-01230JB-LF (D.N.M. Sept. 20, 2018) ......................................... 12

*Meade v. Guar. Bank*,
    No. 1:12-CV-1559, 2013 WL 5438750 (M.D. Pa. Sept. 27, 2013) ..................... 1

*Murakowski v. Univ. of Delaware*,
    575 F. Supp. 2d 571 (D. Del. 2008) ................................................................... 11

*Nash v. Auburn Univ.*,
    812 F.2d 655 (11th Cir. 1987) ........................................................................... 12

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988) ................................................................................ 1

*Simms v. Pennsylvania State University-Altoona*,
    No. 3:17-cv-201, 2018 WL 1413098 (W.D. Pa. Mar. 20, 2018) ....................... 14

*Van Le v. Univ. of Med. & Dentistry*,
    Civ. A. No. 08-991 (SRC), 2009 WL 1209233 (D.N.J. May 4,
    2009) ................................................................................................................... 11

*Winnick v. Manning*,
    460 F.2d 545 (2d Cir. 1972) ................................................................................ 7

## Other Authorities

*Probable Cause*, Black's Law Dictionary (10th ed. 2014) ..................................... 10

Defendant The Pennsylvania State University submits this Reply Brief in further support of its Motion to Dismiss (ECF No. 16) and in response to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss (the "Opposition") (ECF No. 23).

## I.      Plaintiff premises his arguments regarding a lack of "fair process" and "unbiased decision-makers" on misstatements of fact and misapplication of the law.

Plaintiff argues that the University did not provide constitutionally-mandated fair process and unbiased decision-makers because it failed to: (1) "limit the investigator's power to funnel and filter evidence;" (2) "provide . . . a process that followed its own rules and that was fair and equitable;" and (3) "provide . . . an unbiased tribunal."(Opposition at 20-24). These arguments fail as a matter of law.

### A.      Plaintiff inappropriately draws parallels to an earlier iteration of the University's procedures and inaccurately describes the process followed during the investigation into his misconduct.

Plaintiff, in an attempt to shoehorn his complaint into a prior holding of this Court, argues for the <u>first time</u>[1] that the Investigator in this case had too much

---

[1] For this reason alone, this component of Plaintiff's Opposition should be disregarded by the Court. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation omitted); *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."); *Meade v. Guar. Bank*, No. 1:12-CV-1559, 2013 WL 5438750, at *6 (M.D. Pa. Sept. 27, 2013) (declining to consider allegations not appearing in complaint, "instead . . . raised for the first time in the responsive pleading to a motion to dismiss").

discretion in conducting the investigation. (Opposition at 20-21). This argument is without merit for two primary reasons: (1) contrary to Plaintiff's assertion, the procedure applied to his case is markedly different from that at issue in *Doe v. Pennsylvania State University,* 336. F. Supp. 3d 441 (M.D. Pa. 2018) (the "2018 Decision"); and (2) again contrary to Plaintiff's assertion, the Investigator here was a neutral factfinder who shared information gathered during the investigation with the parties and made no recommendation regarding responsibility.

**1.     The procedure applied to Doe's case is significantly different from the "paper-only Investigative Model" criticized in the 2018 Decision.**

In the 2018 Decision, this Court denied the University's motion to dismiss a due process claim, critiquing the "paper-only Investigative Model" that had been applied in the underlying student conduct proceeding. 336 F. Supp. 3d at 450. In particular, the Court was troubled that under the paper-only Investigative Model: (1) the decision-making body based its decision "entirely on the paper record [i.e. the Investigative Packet]"; (2) "all of the testimony offered . . . was filtered by [the investigator] through the Investigative Packet"; and (3) "testimony appear[ed] only in paraphrased form [in the Investigative Packet], with virtually no actual quotes." *Id.* at 443, 449. Moreover, the panel under the paper-only Investigative Model did not hold a hearing and did not otherwise have the opportunity to assess the

complainant's and respondent's credibility through live testimony or in-person meetings. *Id.* at 450.

Crucially, the Title IX Decision Panel (the "Panel") in current-Plaintiff's case was <u>not</u> "relying solely on the Investigative Packet and its written responses [from the parties]" when it found Plaintiff responsible for violating University policy. 2018 Decision, 336 F. Supp. 3d at 450; *see also* Compl. at Exhibit H, p. 2 (describing testimony heard and considered). Instead, in direct contrast to the paper-only Investigative Model at issue in the 2018 Decision, the procedure employed in Plaintiff's case included a ***live hearing*** before a three-member panel who ***heard directly*** from Plaintiff and the complainant (Jane Roe). (Compl. at Exhibit H, p. 1-2).

### 2. Consistent with the Title IX Procedures, the Investigator provided the parties with access and an opportunity to respond to the information gathered.

Among Plaintiff's newly-declared qualms with the investigation is his complaint that the University's procedures provided him with "no opportunity to challenge . . . or provide additional context to inform" the Investigator's investigative decisions. (Opposition at 20-21). Plaintiff's argument is belied by the plain language of the University's *Student Title IX Report Procedures* (the "Title IX Procedures"):

> At the conclusion of the investigation, the assigned investigator will prepare a draft Investigative Packet,

3

> ***which will contain all material information gathered during the investigation and being put forward for consideration in determining whether to hold the Respondent responsible for the alleged incident***. The draft Investigative Packet will not contain any findings of responsibility/non-responsibility. . . .
>
> ***The Complainant and Respondent will be provided with an opportunity to meet with the assigned investigator in order to review the draft Investigative Packet, submit additional information or comments, identify additional witnesses or evidence for the investigator to pursue, and submit any additional questions that they believe should be asked of any other party or witness***. The parties will have up to 5 business days to submit any additional questions or follow-up after reviewing the draft Investigative Packet.
>
> Once the parties have responded to the draft Investigative Packet or the 5 business days have elapsed, the assigned investigator will review and address any questions or follow-up submitted by the parties in response to the draft Investigative Packet, as appropriate.

(Title IX Procedures, available at http://titleix.psu.edu/psu-title-ix-procedures/

(emphasis added)).[2] Thus, before the investigation was deemed complete, Plaintiff

had the opportunity to suggest avenues for additional investigation and to respond

---

[2] Even if Plaintiff's real gripe is that the Investigator had the discretion to decide what leads to follow and what evidence was relevant, in other words *to investigate*, his argument would still fail to substantiate his due process claim. *See Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 340 n. 17 (D.R.I. 2016) (explaining that "an investigator must retain the discretion to make judgment calls about relevance" and generally courts will not second-guess an investigator's judgment calls). Moreover, a challenge to the investigator's decision-making does not form the foundation of a valid due process challenge. *See Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 657 (S.D. Ohio 2016) (explaining "the procedural-due-process analysis focuses on the decision-maker, *not the investigator*.") (emphasis added).

to the Investigative Packet. Moreover, at the hearing, Doe was able to, and did, "address information in the investigative packet." (Compl. at Exhibit H, p. 1). Not only was Plaintiff able to follow-up with the Investigator, but the Panel was as well. The Panel, after it received the Investigative Packet in advance of the hearing, had the option to "submit additional questions to the Investigator or request additional follow-up by the Investigator." Plaintiff therefore had several opportunities to challenge and supplement the Investigator's decisions.

> **B.    The University followed its procedures in investigating and adjudicating the complaint against Plaintiff.**

Plaintiff also argues that the University violated due process when it "reopened the investigation" to allow Roe an opportunity to "amend" the Investigative Packet and then failed to give Plaintiff an opportunity to respond to that amendment. (Opposition at 6-7; 21-22). In making this argument, Plaintiff both misstates the requirements of the University's Procedures and ignores the relevant facts.

As explained above, per the Title IX Procedures, the Investigator prepares a draft Investigative Packet and then meets with the parties so that they can "review the draft Investigative Packet, submit additional information or comments, identify additional witnesses or evidence for the investigator to pursue, and submit any additional questions that they believe should be asked of any other party or witness." (Title IX Procedures, available at http://titleix.psu.edu/psu-title-ix-

procedures/). The parties have up to five business days after their meetings with

the Investigator to make their submissions; the Investigator then conducts any

additional investigation and revises the Packet, as appropriate. (*Id.*). "The parties

[are] provided an opportunity to ***review new information*** that is added to the

Investigative Packet [as a result of the parties' input] before it is finalized." (*Id.*)

(emphasis added). The Title IX Procedures do not contemplate an additional

opportunity for the parties to comment on the Investigative Packet at this point

(before it is forwarded to the Case Manager), though they are permitted to respond

to any resulting charges premised on the Packet. (*Id.*).

In an apparent attempt to muddy the record, Plaintiff reads steps into the

Procedures that simply do not exist. In particular, Plaintiff is incorrect in stating

that he was entitled to further investigation or an additional opportunity to provide

comments to the Packet after the Packet was updated to reflect Roe's responses.

Instead, Plaintiff was entitled to, and did, see the draft Investigative Packet, and

was entitled to, and did, see the new information that was added to the Packet after

the Investigator met with Roe about her response to the draft. (*Id.*; Compl. at

Exhibit F (forwarding additions to Investigative Packet made based on

Investigator's conversation with Roe)). After the new information was sent to

Plaintiff, the Investigative Packet was sent to the Office of Student Conduct

("OSC"), as was required by the Title IX Procedures. (Compl. at Exhibit F; Title IX Procedures, available at http://titleix.psu.edu/psu-title-ix-procedures/).

While true that the Investigator deviated from the exact specifications of the Title IX Procedures by meeting with Roe to review the draft Investigative Packet, and making additions to the Packet based on that meeting, on January 19, 2018, seven days after initially submitting the Packet to OSC (normally, the Packet is not submitted to OSC until the Investigator has met with both parties), such deviation was a minor one that did not impact the fundamental fairness of the process. Courts have been hesitant to find "that every deviation from a university's regulations constitutes a deprivation of due process." *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972). In fact, only "***significant and unfair*** departures from an institution's own procedures can amount to a violation of due process." *Furey v. Temple Univ.*, 730 F. Supp. 2d 380, 396-97 (E.D. Pa. 2010) (emphasis added). Here, the adjustment to the timeline was not such a significant or unfair departure. Plaintiff's ability to see the draft Packet in the first instance was entirely unaffected, as were his rights to review the new information added to the Packet as a result of Roe's input, respond to the ultimate charges, and address the information contained in that Packet at the Hearing. Providing Roe with an opportunity to be heard (i.e. providing her with the opportunity to meet with the Investigator and respond to the draft Investigative Packet)—particularly where

doing so did not impact any of Plaintiff's rights and extended the process by only an additional week—can hardly be said to constitute a violation of Plaintiff's due process rights. Indeed, Plaintiff does not identify any harm resulting from this minor deviation.

## C. The Hearing Panel was vested with sole and complete authority to make a finding of responsibility.

The last component of Plaintiff's "fairness" argument is that the University failed to provide him with an unbiased tribunal. Strangely, however, Plaintiff does not actually focus his argument on any alleged bias on the part of the tribunal, i.e. the Panel. (Opposition at 22). Instead, Plaintiff makes several factually inaccurate allegations about the *Case Manager's* role in the process and (incorrectly) concludes that the Case Manager has "prosecutorial, adjudicative, and sanctioning roles" that "in effect, reversed the burden of proof, relegating the Panel to a role more akin to an appeal tribunal." (Opposition at 23-24).

As required by the University's Title IX Procedures, the Case Manager, Karen Feldbaum, reviewed the Investigative Packet to decide whether the results of the investigation could "reasonably support" a finding that Plaintiff had violated the Code. (Compl. at ¶ 88). This threshold determination by the Case Manager serves a gatekeeping function: if the investigation did not result in sufficient information to make a violation a *possibility*, the case would be closed without charges. (Title IX Procedures, available at http://titleix.psu.edu/psu-title-ix-

procedures/). In those cases where the Case Manager finds that there is sufficient

information to proceed (like in Plaintiff's), an off-ramp of sorts is offered: charges

will be assigned and the respondent can decide to accept responsibility and an

appropriate sanction, thereby ending the process. (*Id.*). A respondent who instead

chooses to contest charges proceeds to a hearing over which an independent

adjudicative body, the Panel, presides. (*Id.*; University's Brief in Support of

Motion to Dismiss (the "Opening Brief") at Exhibit 1, pp. 13-14). The Case

Manager does not serve as a "prosecutor" at the hearing and otherwise has no

further role in the hearing and adjudication processes[3]; ***in fact, Ms. Feldbaum was***

***not even present at Plaintiff's hearing***. (Compl. at Exhibit H, p. 1 (identifying

individuals present at hearing)). It is incumbent upon, and within the authority of,

the Panel alone to "deliberate and make a decision of responsibility or non-

responsibility." (Opening Brief at Exhibit 1, p. 15).

Plaintiff's related argument that the "integrity" of the process was

undermined by the Case Manager's "reasonably supports" determination carries no

water. Plaintiff asserts in two footnotes that it would be "disingenuous" for the

University to argue that the "reasonably supports" standard is something different

---

[3] Notably, even if Ms. Feldbaum did have both "prosecutorial" and adjudicative responsibilities, that alone would be insufficient to support a finding that the University's process was constitutionally deficient. *See, e.g.*, *Doe v. Univ. of S. Cal.*, 29 Cal. App. 5th 1212, 1235 n.29, 241 Cal. Rptr. 3d 146, 166 n.29 (Ct. App. 2018) ("[T]he combination of investigative and adjudicative functions does not, without more, constitute a due process violation. . . .") (quoting *Withrow v. Larkin*, 421 U.S. 35, 58 (1975)), reh'g denied (Dec. 27, 2018).

from a preponderance standard, Opposition at 23 nn.80-81; however, he articulates no reason why this is so. Indeed, the body of the Opposition frames the issue correctly when it calls the Case Manager's determination, a "probable cause-like determination." (*Id.* at 23). As in a probable cause determination, the Case Manager is tasked with assessing whether there is a "reasonable ground" or "reasonable basis" to support a violation such that the process should continue. *Probable Cause*, Black's Law Dictionary (10th ed. 2014). Of course, the preponderance of the evidence standard that the Panel ultimately applies is a higher standard, requiring that it be "more likely than not" that a violation occurred. (Opening Brief at Exhibit 1, p. 4).

In sum, the Panel was not "under the control" of Ms. Feldbaum or OSC more generally, but rather had complete authority and discretion to make a finding. That authority was in no way diminished by the Case Manager's preliminary determination that the investigation revealed enough information to "reasonably support" a violation such that the process should continue.

## II.     The University's use of the preponderance of the evidence standard comports with due process.

Plaintiff argues that application of the preponderance of the evidence standard is "inadequate in sexual assault disciplinary actions." (Opposition at 25). However, "[s]chool disciplinary proceedings are not criminal trials" and a school's adjudication of a sexual assault claim "do[es] not require courts to elevate the

governing evidentiary standard [in such disciplinary proceedings] from preponderance of the evidence." *Doe v. Univ. of Arkansas-Fayetteville*, No. 5:18-CV-05182, 2019 WL 1493701, at *10 (W.D. Ark. Apr. 3, 2019), appeal filed (8th Cir. Apr. 24, 2019);[4] *see also Gischel v. Univ. of Cincinnati*, 302 F. Supp. 3d 961, 977 (S.D. Ohio 2018) (upholding University of Cincinnati's practice of resolving sexual misconduct complaints based on a preponderance of the evidence standard); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 604 (S.D. Ohio 2016) (finding that hearing panel's use of preponderance of the evidence standard, even where burden of proof is placed on students accused of sexual misconduct, does not constitute a Due Process violation).

To hold otherwise would be to require that a university's internal, private disciplinary process be handled exactly like a criminal case and would fly in the face of longstanding precedent. *See, e.g.*, *Van Le v. Univ. of Med. & Dentistry*, Civ. A. No. 08-991 (SRC), 2009 WL 1209233, at *12 (D.N.J. May 4, 2009) ("The Supreme Court has explicitly cautioned against imposing trial-like procedures on public schools in dealing with their disciplinary matters."), aff'd 379 F. App'x 171 (3d Cir. 2010); *Murakowski v. Univ. of Delaware*, 575 F. Supp. 2d 571, 586 (D. Del. 2008) ("Although a university must treat students fairly, it is not required to

---

[4] A copy of *Doe v. Univ. of Arkansas-Fayetteville*, together with all other unreported decisions cited herein and not provided to the Court with the Opening Brief, is attached as Exhibit A.

convert its classrooms into courtrooms."); *Doe v. Cummins*, 662 F. App'x 437, 451 (6th Cir. 2016) ("Although the procedures employed by UC did not rise to the level of those provided to criminal defendants, that level of process is not required in school-disciplinary proceedings.").

### III.   Courts in this Circuit, and nationwide, have held that "mediated cross-examination," as employed by the University, satisfies due process.

As explained in the Opening Brief, the type of "mediated" cross-examination offered by the University, i.e. cross-examination conducted through the Panel, satisfies Due Process. (Opening Brief at 20-21). Plaintiff's Opposition fails to offer any meaningful challenge to this proposition.[5] (Opposition at 13-18). Instead, Plaintiff spends five pages discussing cases that either (1) do not offer an explanation of what cross-examination must look like in order to satisfy due process, *e.g.*, *Gorman v. Univ. of Rhode Island*, 837 F.2d 7 (1st Cir. 1988), *Lee v. Univ. of New Mexico*, Case 1:17-cv-01230JB-LF (D.N.M. Sept. 20, 2018); *or* (2) conclude that some form of "mediated cross" is in fact constitutional, *e.g.*, *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 404 (6th Cir. 2017); *Doe v. Univ. of S. Miss.*,

---

[5] The Opposition also fails to acknowledge that, as noted in the University's Opening Brief, Plaintiff declined to take advantage of the University's procedures by submitting questions to be asked of Roe on cross. (Opening Brief at 13, 21). Plaintiff's challenge to the use of mediated cross-examination should be dismissed for that reason alone. *See Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) (finding no due process violation where students failed to pose questions to accusing witness through chancellor of hearing board, finding that their choice "not [to] avail themselves of the opportunity to question the witness through the chancellor cannot be characterized as a denial of due process."); *Doe v. Regents of Univ. of Cal.*, 5 Cal. App. 5th at 1104, 210 Cal. Rptr. 3d at 519-20 (finding no due process violation "especially" where student declined to submit any questions for panel chair to ask witnesses on cross-examination).

No. 2:18-cv-00153 (S. D. Miss. Sept. 26, 2018); *Furey v. Temple Univ.*, 884 F. Supp. 2d 223 (E.D. Pa. 2012); *Doe v. Univ. of S. Cal.*, 29 Cal. App. 5th at 1233, 241 Cal. Rptr. 3d at 163.[6]

While Plaintiff requests that the Court "swiftly reject PSU's contention that . . . funneled and filtered questioning . . . suffices as meaningful cross examination," he simply does not provide the grounds for it do so. (Opposition at 17). In fact, Plaintiff himself acknowledges that he is "not asserting that there is an unlimited right to cross-examination in school disciplinary proceedings." (*Id.* at 18). And, courts in this Circuit, like the majority of courts across the nation, have held that the process offered by the University, while giving the adjudicative body a gatekeeping function, is constitutionally sufficient. Opening Brief at 20-21; *accord Doe v. Regents of Univ. of Cal.*, 5 Cal. App. 5th at 1084-1106, 210 Cal. Rptr. 3d at 504-21 (finding no Due Process violation where chair of review panel screened irrelevant and repetitive questions, asking only nine out of the 32 questions posed by accused student); *Gorman*, 837 F.2d at 16 (summarizing "suffice it to state that the right to unlimited cross-examination has not been deemed an essential

---

[6] The only case that Plaintiff cites that may be considered an outlier in this regard is *Doe v. Baum*, 903 F. 3d 575 (6th Cir. 2018). *Baum*, in suggesting that cross-examination can only be "mediated" by a party's representative, is not only not precedential, but is also inconsistent with both Third Circuit and Sixth Circuit precedent. *See Baum*, 903 F.3d at 589 (Gilman, J., dissenting) (recognizing that Sixth Circuit precedent does not require "unfettered [direct] cross-examination," but rather that "the accused . . . have an opportunity for at least a 'circumscribed form' of cross-examination where he or she is allowed to submit questions to the trier of fact, who will then directly pose those questions to the witnesses").

requirement of due process in school disciplinary cases" and holding that the

limitation on plaintiff's ability to cross-examine witnesses on his claims of bias did

not deprive him of due process).

## IV.   Active participation of an advisor in student disciplinary proceedings is not a constitutional guarantee.

As with the issue of cross-examination, Plaintiff fails to address the clear

legal precedent cited in the University's Opening Brief that students do not have an

automatic constitutional right to active representation by an attorney at a

disciplinary hearing. (Opposition at 18-20). Instead, Plaintiff takes quotes out of

context[7] and, confusingly, inserts an irrelevant discussion about cross-examination

into the middle of his argument. Put simply, even in the context of disciplinary

---

[7] For example, on pages 18-19 of the Opposition Plaintiff provides an incomplete and out-of-context quote from *Simms v. Pennsylvania State University-Altoona*, No. 3:17-cv-201, 2018 WL 1413098, at *5 (W.D. Pa. Mar. 20, 2018), cert. denied, No. 3:17-cv-210, 2018 WL 1912845 (W.D. Pa. Apr. 23, 2019), as cited in *Haney v. West Chester Univ.*, Civ. A. No. 18-02456, 2018 WL 3917975, at *10 (W.D. Pa. Aug. 16, 2018). It is clear why—the *Haney* court's recitation and application of the law, and the full quote from *Simms*, are entirely unhelpful to Plaintiff:

> Plaintiff next complains that while the Code permits a student to have an attorney advisor, it does not permit an attorney to actively participate at the hearing. ***Due process does not require such participation***. *Simms v. Pa. State Univ.-Altoona*, No. 3:17-cv-210, 2018 WL 1413098, at *5 (W.D. Pa. Mar. 20, 2018) (noting that while the "Third Circuit has not directly faced the question of whether procedural due process gives an accused student the right to have her counsel actively participate in her student disciplinary hearing . . . **the majority of district courts in the Third Circuit that have confronted this question have held that no such right exists**.").

2018 WL 1413098, at *5 (emphasis added; underlining denotes portion of quote omitted by Plaintiff).

actions for sexual misconduct, active participation by an advisor is not required by due process. *See Cummins*, 662 F. App'x at 449 (holding inability of student's advisor to actively participate is not a due process violation under *Mathews* because such participation provides minimal benefit to a student, but puts a significant burden on the university "due to the added time, expense, and increased procedural complexity"); Opening Brief at 21-22.

## V.   Conclusion.

For the reasons stated above and in the University's Opening Brief, the Court should grant the University's Motion to Dismiss.

Respectfully submitted,

s/ *James A. Keller*
James A. Keller, Esq., PA Atty. ID 78955
Amy L. Piccola, Esq., PA Atty. ID 208888 /
   *Admitted Pro Hac Vice*
SAUL EWING ARNSTEIN & LEHR LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Phone: (215) 972-1964 / 8405
Fax: (215) 972-4152 / 1871
James.Keller@saul.com / Amy.Piccola@saul.com

Dated: April 26, 2019

## **WORD COUNT CERTIFICATION**

In accordance with L.R. 7.8(b), I hereby certify that the foregoing brief contains 4,687 words, as calculated by Microsoft Word 2010.


*/s/ James A. Keller*
James A. Keller


Dated: April 26, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing *Reply Brief in Support of Motion to Dismiss* to be served upon the following via the Court's ECF system:

Andrew J. Shubin, Esquire
333 South Allen Street
State College, PA 16801
Shubin@statecollegelaw.com
*Attorney for Plaintiff*

*s/ James A. Keller*
James A. Keller

Dated: April 26, 2019